Bradley J. Dixon, ISB No. 6167
Kersti H. Kennedy, ISB No. 9064
GIVENS PURSLEY LLP
601 W. Bannock Street
PO Box 2720
Boise, ID  83701-2720
Telephone (208) 388-1200
Facsimile (208) 388-1300
bradleydixon@givenspursley.com
kerstikennedy@givenspursley.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT IDAHO

| | |
|---|---|
| R. AARON SEEHAWER, as Trustee of the B.A. FISCHER SALES, INC. TRUSTEED CROSS-PURCHASE AGREEMENT; and R. AARON SEEHAWER as Trustee of the TBM, INC. TRUSTEED CROSS-PURCHASE AGREEMENT,<br><br>Plaintiffs,<br><br>v.<br><br>KATHY KEHOE, as Trustee of the SICKNESS, ACCIDENT & DISABILITY INDEMNITY TRUST 2005; KATHY KEHOE, as Trustee of the GRIST MILL TRUST WELFARE BENEFIT PLAN; and UNIVERSITAS EDUCATION, LLC,<br><br>Defendants. | Case No.<br><br>**VERIFIED COMPLAINT** |

COMES NOW Plaintiffs R. Aaron Seehawer, as trustee of the B.A. Fischer Sales, Inc. Trusteed Cross-Purchase Agreement and R. Aaron Seehawer as trustee of the TBM, Inc. Trusteed Cross-Purchase Agreement, by and through his counsel of record, Givens Pursley LLP, and for his claims against Defendants complains and alleges as follows:

VERIFIED COMPLAINT - 1
6796775_1

# I. PARTIES

1. Plaintiff R. Aaron Seehawer is the named trustee of the B.A. Fischer Sales, Inc. Trusteed Cross-Purchase Agreement and is a resident of the state of Idaho.

2. Plaintiff R. Aaron Seehawer is the named trustee of the TBM, Inc. Trusteed Cross-Purchase Agreement and is a resident of the state of Idaho.

3. Defendant Universitas Education, LLC ("Universitas") is a Delaware limited liability company with its principal place of business in New York, New York.

4. Defendant Kathy Kehoe, as Trustee of the Grist Mill Trust Welfare Benefit Plan ("Grist Mill"), a section 419 Welfare Benefit Plan and trust organized under the laws of the State of Connecticut, is a citizen of Avon, Connecticut.

5. Defendant Kathy Kehoe, as Trustee of the Sickness, Accident & Disability Indemnity Trust ("SADI"), a section 419 Welfare Benefit Plan and trust organized under the laws of the State of Connecticut, is a citizen of Avon, Connecticut.

6. The Penn Mutual Life Insurance Company ("Penn Mutual") is an involved party but not a named defendant at this stage. Penn Mutual is a mutual life insurance company organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Horsham, Pennsylvania.

7. Life Insurance Company of the Southwest ("LSW") is an involved party but not a named defendant at this stage. LSW is a life insurance company organized and existing under the laws of Texas with its principal place of business located in Addison, Texas.

# II. JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiffs reside in this district and because a substantial part of the events or omissions giving rise to this action occurred in this district.

10. This Court may exercise personal jurisdiction over Grist Mill, SADI, and Universitas, because they have conducted substantial, continuous and systematic activities in this district and because their substantial contacts with this district gave rise to this action. Additionally, SADI and Grist Mill contracted with citizens of the state of Idaho. Universitas, by its actions, has purported to restrain property owned by citizens of the state of Idaho.

### III.  FACTUAL BACKGROUND

**A.    B.A. Fischer Sales, Inc.**

11. B.A. Fischer Sales, Inc. is a wholesale agricultural supply house located in Boise, Idaho.

12. Prior to his death, Lawrence O. Fischer was one of the shareholders of B.A. Fischer Sales, Inc.

13. On or about July 1, 2006, the three shareholders of B.A. Fischer Sales, Inc., Lawrence O. Fischer, Bernard Fischer and Blake Fischer, entered into the B.A. Fischer Sales, Inc. Trusteed Cross-Purchase Agreement ("B.A. Fischer Agreement").

14. A cross-purchase agreement is a contract between shareholders in a close corporation that restricts the transferability of stock and imposes instruction.

15. The B.A. Fischer Agreement provides that, in the event of the death or disability of one of the shareholders, the remaining shareholders will buy the shares belonging to the deceased or disabled shareholder.

16. The B.A. Fischer Agreement provides that the parties to the agreement may obtain life insurance policies to fund all or a substantial portion of the buy-out obligation.

17. The B.A. Fischer Agreement appointed Mr. Seehawer as trustee and provides that the trustee "shall hold all policies of Life Insurance purchased for the purpose of funding this Agreement in the event of a Shareholder's death. If the policies have been purchased pursuant to an arrangement qualifying under IRC §§ 419 or 419A, then such policies shall be owned and held by the welfare benefit trust and shall name the Trustee as the beneficiary."

18. The B.A. Fischer Agreement provides that upon the death of a shareholder, the trustee "shall" collect the proceeds of the life insurance policies.

19. In conjunction with the execution of the B.A. Fischer Agreement, B.A. Fischer Sales, Inc. enrolled with Grist Mill via the Adoption Agreement executed on June 26, 2005.

20. Grist Mill was intended to constitute a welfare benefit plan within the meaning of Section 419 of the Internal Revenue Code. Under Grist Mill, employers pay an administration fee to Grist Mill and make regular payments which are used to purchase life insurance policies on certain specified employees. While Grist Mill is the named beneficiary under the life insurance policies it purchases, it receives any proceeds from the policies in trust for the benefit of the policy beneficiaries as designated by the employees.

21. Lawrence O. Fischer executed the Election of Participation & Beneficiary Designation Form with Grist Mill on April 8, 2005 identifying the beneficiary of any death benefit payable under Grist Mill as the B.A. Fischer Agreement.

22. As contemplated in the B.A. Fischer Agreement, Grist Mill obtained two life insurance policies on Lawrence O. Fischer using payments from B.A. Fischer Sales, Inc., to fund the premiums.

23. On or about June 6, 2007, Penn Mutual issued Policy No. 8199632 insuring the life of Lawrence O. Fischer with a death benefit in the amount of $750,000 ("Penn Mutual Grist Mill Policy").

24. On or about July 23, 2007, LSW issued Policy No. LS0147497 insuring the life of Lawrence O. Fischer with a death benefit in the amount of $1,000,000 ("LSW Policy").

25. Penn Mutual and LSW were both instrumental in marketing and promoting the purchase of life insurance policies through the Grist Mill plan and related welfare benefit plans.

26. At all times relevant hereto, Penn Mutual knew the Grist Mill Plan was purchasing and making payments on the Penn Mutual Grist Mill Policy for the ultimate benefit of B.A. Fischer Sales, Inc., pursuant to the B.A. Fischer Agreement.

27. At all times relevant hereto, LSW knew Grist Mill was purchasing and making payments on the LSW Policy for the ultimate benefit of B.A. Fischer Sales, Inc., pursuant to the B.A. Fischer Agreement.

28. Since enrolling with Grist Mill, B.A. Fischer Sales, Inc., through the trust and Mr. Seehawer, has made in excess of $500,000 in contributions for participating employees, including Lawrence O. Fischer.

29. Grist Mill failed and/or refused to pay the insurance proceeds it agreed to procure as required by the applicable plan agreements.

**B.  TBM, Inc.**

30. TBM, Inc. owns and operates Traditional Bowhunter magazine.

31. Prior to his death, Lawrence O. Fischer was the co-publisher and advertising manager of Traditional Bowhunter magazine and a shareholder of TBM, Inc.

32. On or about June 23, 2005, Lawrence O. Fischer and Timothy J. Conrads entered into the TBM, Inc. Trusteed Cross-Purchase Agreement ("TBM Agreement").

VERIFIED COMPLAINT - 5
6796775_1

33. The TBM Agreement provides that, in the event of the death or disability of one of the shareholders, the remaining shareholder will buy the shares belonging to the deceased or disabled shareholder.

34. The TBM Agreement provides that the parties to the agreement may obtain life insurance policies to fund all or a substantial portion of the buy-out obligation.

35. The TBM Agreement appointed Mr. Seehawer as trustee and provides that the trustee "shall hold all policies of Life Insurance purchased for the purpose of funding this Agreement in the event of a Shareholder's death.  If the policies have been purchased pursuant to an arrangement qualifying under IRC §§ 419 or 419A, then such policies shall be owned and held by the welfare benefit trust and shall name the Trustee as the beneficiary."

36. The TBM Agreement further provides that upon the death of a shareholder, the trustee "shall" collect the proceeds of the life insurance policies.

37. In conjunction with the execution of the TBM Agreement, TBM, Inc. enrolled in SADI via the Adoption Agreement dated November 9, 2005.

38. SADI was intended to constitute a welfare benefit plan within the meaning of Section 419 of the Internal Revenue Code.  Under SADI, employers pay an administration fee to the SADI and make regular payments which are used to purchase life insurance policies on certain specified employees.  While SADI is the named beneficiary under the life insurance policies it purchases, it receives any proceeds from the policies in trust for the benefit of the policy beneficiaries as designated by the employees.

39. Lawrence O. Fischer executed the Election of Participation & Beneficiary Designation Form with SADI on November 9, 2005 identifying the beneficiary of any death benefit payable to SADI as the TBM Agreement.

40. As contemplated in the TBM Agreement, SADI obtained a life insurance policy on Lawrence O. Fischer using payments from TBM, Inc. to fund the premiums.

41. On or about September 21, 2005, Penn Mutual issued Policy No. 8170968 insuring the life of Lawrence O. Fischer with a death benefit in the amount of $1,250,000, naming the owner and beneficiary of the policy as the SADI Trust ("Penn Mutual SADI Policy").

42. Penn Mutual was instrumental in marketing and promoting the purchase of life insurance policies through SADI and related welfare benefit plans.

43. At all times relevant hereto, Penn Mutual knew SADI was purchasing and making payments on the Penn Mutual SADI Policy for the ultimate benefit of TBM, Inc., pursuant to the TBM Agreement.

44. Since enrolling in SADI, TBM, Inc., through the trust and Mr. Seehawer, has made approximately $125,000 in contributions to secure life insurance for Lawrence O. Fischer.

45. The Grist Mill Plan failed and/or refused to pay the insurance proceeds it agreed to procure as required by the applicable plan agreements.

C. **Death of Lawrence O. Fischer and Defendants' Refusal to Pay**

46. Lawrence O. Fischer died in Boise, Idaho, on October 18, 2014.

47. On October 22, 2014, Mr. Seehawer completed a Grist Mill Trust Death Claim Form indicating that Mr. Fischer had died.

48. Mr. Seehawer undertook this action as trustee in accordance with his obligations under the B.A. Fischer Agreement for the benefit of the surviving shareholder signatories to the agreement.

49. Grist Mill made a request from Penn Mutual for payment of the death benefit on the Penn Mutual Grist Mill Policy.

50. Penn Mutual and Grist Mill were obligated to pay the death benefit on the Penn Mutual Grist Mill Policy upon receipt of a demand for payment and proof of Mr. Fischer's death.

51. Penn Mutual and Grist Mill have refused to pay the death benefit under the Penn Mutual Grist Mill Policy.

52. Grist Mill made a request from LSW for payment of the death benefit on the LSW Policy.

53. LSW and Grist Mill were obligated to pay the death benefit on the LSW Policy upon receipt of a demand for payment and proof of Mr. Fischer's death.

54. LSW and Grist Mill refused to pay any amount under the LSW Policy.

55. Incidentally, on February 23, 2011, Bernard A. Fischer, passed away. Consistent with Grist Mill Plan obligations, Mr. Seehawer completed a Death Claim Form and policy benefits were paid on April 7, 2011.

56. On October 22, 2014, Mr. Seehawer completed a SADI Death Claim Form.

57. Mr. Seehawer undertook this action as trustee in accordance with his obligations under the TBM Agreement for the benefit of the surviving shareholder signatory to the agreement.

58. SADI made a request from Penn Mutual for payment of the death benefit on the Penn Mutual SADI Policy.

59. Penn Mutual and SADI were obligated to pay the death benefit on the SADI Policy upon receipt of a demand for payment and proof of Mr. Fischer's death.

60. Penn Mutual and SADI refused to pay any amount under the SADI Policy.

**D.  The Restraining Notice**

61. On August 12, 2014, prior to the death of Mr. Fischer, in the lawsuit styled *Universitas Education, LLC v. Nova Group, Inc. as trustee, sponsor and fiduciary of The*

*Charter Oak Trust Welfare Benefit Plan, et al.*, Case Nos. 11-CV-1590 and 11-CV-8726, Southern District of New York (the "Universitas Lawsuit"), a judgment was entered in favor of Universitas.

62. The judgment was entered against Daniel E. Carpenter, Grist Mill Capital, LLC, Grist Mill Holdings, LLC, Carpenter Financial Group, Avon Capitol, LLC, Phoenix Capital Management, LLC, Grist Mill Trust Welfare Benefit Plan and Hanover Trust Company (hereinafter the "Universitas Judgment Debtors").

63. On August 27, 2014, Universitas issued restraining orders to Penn Mutual and LSW pursuant to New York State law purporting to restrain the payment of insurance proceeds by LSW and Penn Mutual consistent with the above described structure.

64. SADI is not a judgment debtor in the Universitas Lawsuit.

65. On February 17, 2015, Penn Mutual filed the Complaint in Interpleader in the lawsuit styled *Penn Mutual Life Insurance Company v. Kathy Kehoe, as Trustee of the Sickness, Accident & Disability Indemnity Trust 2005; Kathy Kehoe, as Trustee of the Grist Mill Trust Dated 10-1-03; and Universitas Education LLC*, Case No. 15-CV-01111k, Southern District of New York (the "Interpleader").

66. Inexplicably, Penn Mutual included in the Interpleader sums owed under the Penn Mutual SADI Policy although SADI is not a judgment debtor and not subject to the restraining order.

67. On November 12, 2015, the United States District Court for the Southern District of New York entered the Order (Dkt. 588) denying the Universitas request to extend the restraining orders to the Penn Mutual SADI Policy death benefits.

68. On February 9, 2016, a court ordered settlement conference was held between the parties to the Interpleader. Therein, despite clear evidence and authority that death benefits are held in trust by Grist Mill and SADI for the benefit of another, Universitas continued to make demands on policy proceeds that are the rightful property of Plaintiffs.

### IV.  CAUSES OF ACTION

#### COUNT ONE
#### Declaratory Judgment

69. Plaintiffs reassert the allegations contained above as through fully set forth herein.

70. An actual, present genuine and justiciable controversy has arisen among Plaintiffs, Universitas, SADI and Grist Mill.

71. This Court should issue a declaratory ruling concerning the ownership of the policy proceeds from the Penn Mutual Grist Mill Policy, LSW Policy and the Penn Mutual SADI Policy and collectability of such proceeds by Universitas.

72. Without a declaratory judgment from the Court, there will continue to be delay, damages inflicted upon the rightful owners of the policy proceeds and uncertainty regarding the claims of Universitas.

73. The relief requested by Plaintiffs will resolve the controversy regarding ownership of the policy proceeds.

#### COUNT TWO
#### Breach of Contract against SADI and Grist Mill

74. Plaintiffs reassert the allegations contained above as through fully set forth herein.

75. Plaintiffs enrolled in the SADI and Grist Mill welfare benefit plans through the election of participation and beneficiary designation forms for the purpose of ensuring the availability of funds to perform under cross-purchase agreements.

76. Plaintiffs have fully performed all obligations to SADI and Grist Mill as outlined in the plan documents for the participation in the welfare benefit plans.

77. SADI and Grist Mill have not performed their corresponding obligations pursuant to the agreement of the parties by, among other things, failing to procure insurance proceeds as contemplated by the agreement of the parties despite collecting significant premiums and fees.

78. As a result of the breach of the agreements between the parties, Plaintiffs have suffered damages in an amount in excess of $75,000.00.

## COUNT THREE
### Breach of Fiduciary Duty - SADI and Grist Mill

79. Plaintiffs reassert the allegations contained above as through fully set forth herein.

80. SADI and Grist Mill owed fiduciary duties to Plaintiffs by virtue of holding insurance policies and insurance policy proceeds in trust for the benefit of Plaintiffs and by accepting substantial sums intended to procure insurance to fund the above described cross purchase agreements.

81. By virtue of the foregoing relationship and fiduciary relationship, SADI and Grist Mill stood in a position of trust and confidence to Plaintiffs and Plaintiffs relied upon them acting with the utmost good faith and in the best interests of Plaintiffs.

82. SADI and Grist Mill as welfare benefit plans owed a fiduciary obligation to secure insurance policies, the proceeds for which would fund the cross-purchase agreements identified above, in the event of a qualifying death of one of the company shareholders.

83. Following a qualifying death, SADI and Grist Mill by committing the acts alleged in this Complaint, including the failure to secure insurance proceeds to fund the cross-purchase agreements and accepting premium and fees breached their duty of fiduciary loyalty to Plaintiffs.

84. In the event this Court finds that any of the policy proceeds may be collected upon by Universitas, SADI and Grist Mill breached their fiduciary duties by failing to secure insurance proceeds for the benefit of Plaintiffs.

85. Plaintiffs did not consent to said breach.

86. As a result of said breach, Plaintiffs were harmed by suffering economic detriment and other damage in an amount exceeding $75,000.00.

## COUNT FOUR
### Abuse of Process - Universitas

87. Plaintiffs reassert the allegations contained above as though fully set forth herein.

88. Universitas has engaged in conduct for the sole purpose of improperly restraining the payment of death benefits held in trust for the benefit of others in order to leverage settlement opportunities with the Universitas Judgment Debtors.

89. Universitas has purported to restrain property and/or money held for the benefit of another by an entity that is not a Universitas Judgment Debtor.

90. Universitas has purported to restrain property and/or money even following a specific decision from the Southern District of New York declining to extend restraining orders as asserted by Universitas.

91. Universitas has engaged in litigation tactics in the Interpleader designed for the sole purpose to interfere with the rights of Plaintiffs.

92. Universitas' conduct constitutes a willful act in the use of legal process not proper in the regular course of a proceeding and their actions are for an ulterior, improper purpose.

93. Based on the Universitas conduct, Plaintiffs have been damaged in an amount exceeding $75,000.00

## V.  RESERVATION OF ADDITIONAL CLAIMS AND PUNITIVE DAMAGES

94. Plaintiffs reserve the right to assert additional claims and counts should it become necessary to do so, including, but not limited to, tortious interference with contract, tortious interference with a prospective economic advantage, punitive damages, a temporary restraining order, preliminary injunction, and permanent injunction.

## VI. ATTORNEYS' FEES AND COSTS

95. In order to assert their rights in this matter, it has been necessary for Plaintiffs to retain counsel.  Plaintiffs request an award of reasonable costs and attorneys' fees pursuant to Idaho Code §§ 12-120(3), 12-121, 12-123, 10-1201, *et. seq*. and the agreements of the parties.  In the event of default, Plaintiffs request the award of fees in the amount of $10,000.00 from each Defendant.

## VII.  PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for relief against Defendants as follows:

1. An order declaring that the proceeds of the insurance policies at issue in this lawsuit are not owned by SADI or Grist Mill, but were rather held in trust for the benefit of Plaintiffs and are therefore not collectable to satisfy any judgment held by Universitas;

2. An order compelling payment of the insurance proceeds of Policy No. 8199632, in addition to interest from the date of Lawrence Fischer's death, to Mr. Seehawer as trustee of the B.A. Fischer Agreement;

3. An order compelling payment of the insurance proceeds of Policy No. LS0147497, in addition to interest from the date of Lawrence Fischer's death, to Mr. Seehawer as trustee of the B.A. Fischer Agreement;

4. An order compelling payment of the insurance proceeds of Policy No. 8170968, in addition to interest from the date of Lawrence Fischer's death, to Mr. Seehawer as trustee of the TBM Agreement;

5. For an award of damages against Defendants in amount to be proven at trial;

6. For consequential damages in an amount to be proven at trial;

7. For an award of attorney's fees and costs in accordance with Idaho Code §§ 12-120, 12-121, 12-123, 10-1201, *et. seq.* and the agreements of the parties;

8. Such other and further relief as the Court deems just and proper.

DATED: February 24, 2016.

                    GIVENS PURSLEY LLP

                    */s/ Bradley J. Dixon*
                    Bradley J. Dixon
                    Kersti H. Kennedy

                    Attorneys for Plaintiffs

## VERIFICATION

STATE OF IDAHO )
) ss.
County of Ada )

I, R. Aaron Seehawer, being first duly sworn, depose and state as follows:

I am the Trustee of the B.A. Fischer Sales, Inc. Trusteed Cross-Purchase Agreement and the Trustee of the IBM, Inc. Trusteed Cross-Purchase Agreement, the Plaintiff named in this Verified Complaint; that I am authorized to, and hereby do, make this Verification for and on behalf of said Plaintiff; and that I have read the within and foregoing Verified Complaint and Demand for Jury Trial, know the contents thereof, and believe the same to be true and correct to the best of my knowledge and belief.

R. Aaron Seehawer

SUBSCRIBED AND SWORN to before me this 22 day of February, 2016.

Kalie Sevieri
Notary Public for the State of Idaho
Residing at: Ada County
My Commission Expires: 1/29/2020

VERIFIED COMPLAINT - 15