UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| R. AARON SEEHAWER, as Trustee of the B.A. FISCHER SALES, INC. TRUSTEED CROSS-PURCHASE AGREEMENT; and R. AARON SEEHAWER, as Trustee of the TMB, INC. TRUSTEED CROSS-PURCHASE AGREEMENT, <br><br> Plaintiffs, <br><br> v. <br><br> KATHY KEHOE, as Trustee of the SICKNESS, ACCIDENT & DISABILITY INDEMNITY TRUST 2005; KATHY KEHOE, as Trustee of the GRIST MILL TRUST WELFARE BENEFIT PLAN; and UNIVERSITAS EDUCATION, LLC, <br><br> Defendants. | Case No. 1:16-cv-00082-BLW <br><br> MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it Defendant Universitas's Motion to Dismiss Due to Lack of

Personal Jurisdiction (Dkt. 18). The motion is fully briefed and at issue and the Court has

determined that the decisional process would not be aided by oral argument. For the reasons below, the Court will grant the motion.

## BACKGROUND

Plaintiff R. Aaron Seehawer is the named trustee of the B.A. Fischer Sales, Inc. Trusteed Cross-Purchase Agreement, the trustee of the TBM, Inc. Trusteed Cross-Purchase Agreement, and a resident of the state of Idaho. *Compl.*, ¶¶ 1–2. Defendant Universitas Education, LLC is a Delaware limited-liability company with its principal place of business in New York, New York. *Id.* ¶ 3. Defendant Kathy Kehoe, as Trustee of the Grist Mill Trust Welfare Benefit Plan, a section 419 Welfare Benefit Plan and trust organized under the laws of the State of Connecticut, is a citizen of Avon, Connecticut. *Id.*, ¶ 4. Ms. Kehoe is also the Trustee of the Sickness, Accident & Disability Indemnity Trust ("SADI"), a section 419 Welfare Benefit Plan and trust organized under the laws of the State of Connecticut. *Id.*, ¶ 5.

Generally, and relevant to this particular motion, Seehawer has alleged that Universitas has improperly claimed an interest in insurance proceeds held in trust for the benefit of B.A. Fischer Sales, Inc. and TBM, Inc. Dkt. 21, p. 2. For the sake of efficiency,

the following recitation of facts was taken primarily from Seehawer's memorandum in opposition to Universitas's motion to dismiss.[1]

### 1. The Trusteed Cross Purchase Agreements

A trusteed cross purchase agreement is an agreement commonly utilized in closely held corporations to provide for the restriction of the transfer of shares, but also to provide instruction in the event of the death of one of the shareholders and appoint a trustee to carry out the obligations of the agreement. *Seehawer Aff.* at ¶ 2. Typically, such agreements require that the other shareholders or the company purchase the shares of a deceased or disabled shareholder. *Id.* at ¶ 2. The B.A. Fischer Sales, Inc. Trusteed Cross-Purchase Agreement ("Fischer Sales Agreement") and the TBM, Inc. Trusteed Cross-Purchase Agreement ("TBM Agreement") impose these obligations. *Compl.* ¶¶ 13-15 and 33-35. However, both agreements also allow the companies to obtain insurance policies insuring the life of the shareholders to provide for sums needed to purchase the at-issue shares in the event a shareholder passes away. *Compl.* ¶¶ 16 and 35; *Seehawer Aff.* at ¶ 5. Mr. Seehawer, as trustee for the Fischer Sales Agreement and the TBM Agreement,

---

[1] In his memorandum, Seehawer cites primarily to his Complaint. In considering Universitas's motion to dismiss, the Court must take Seehawer's uncontroverted allegations in his complaint as true. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

obtained such insurance policies, the proceeds of which are designed to fund the obligation to purchase the shares of a deceased shareholder. *Compl.* ¶¶ 22-30 and 40-47; *Seehawer Aff.* at ¶ 7. Specifically, the Fischer Sales Agreement enrolled with Grist Mill, while the TBM Agreement enrolled with SADI. *Compl.* ¶¶ 4, 5 and 38.

With regard to Grist Mill, employers pay an administration fee to Grist Mill and make regular payments which are used to purchase life insurance policies on certain specified employees. While Grist Mill is the named beneficiary under the life insurance policies it purchases, it receives any proceeds from the policies in trust for the benefit of the policy beneficiaries as designated by the employees. *Compl.*, ¶ 20. Lawrence O. Fischer, a shareholder of both TBM, Inc. and B.A. Fischer Sales, Inc., executed the Election of Participation & Beneficiary Designation Form with Grist Mill on April 8, 2005 identifying the beneficiary of any death benefit payable under Grist Mill as the B.A. Fischer Agreement. *Compl.*, ¶ 21. As contemplated in the B.A. Fischer Agreement, Grist Mill obtained two life insurance policies on Lawrence O. Fischer using payments from B.A. Fischer Sales, Inc., to fund the premiums. On June 6, 2007, Penn Mutual Life Insurance Company, which exists under the laws of and has its principal place of business in Pennsylvania, issued Policy No. 8199632 insuring the life of Lawrence O. Fischer with a death benefit in the amount of $750,000 ("Penn Mutual Grist Mill Policy"). *Compl.*, ¶ 23. On July 23, 2007, Life Insurance Company of the Southwest ("LSW"), which exists under the laws of and has its principal place of business in Texas,

issued Policy No. LS0147497 insuring the life of Lawrence O. Fischer with a death benefit in the amount of $1,000,000 ("LSW Policy"). *Compl.*, ¶ 24. Since enrolling with Grist Mill, B.A. Fischer Sales, Inc., through the trust and Mr. Seehawer, has made in excess of $500,000 in contributions for participating employees, including Lawrence O. Fischer. *Compl.*, ¶ 28.

With regard to SADI, Lawrence O. Fischer executed the Election of Participation & Beneficiary Designation Form with SADI on November 9, 2005 identifying the beneficiary of any death benefit payable to SADI as the TBM Agreement. *Compl.*, ¶ 39. As contemplated in the TBM Agreement, SADI obtained a life insurance policy on Lawrence O. Fischer using payments from TBM, Inc. to fund the premiums. *Compl.*, ¶ 40. On September 21, 2005, Penn Mutual issued Policy No. 8170968 insuring the life of Lawrence O. Fischer with a death benefit in the amount of $1,250,000, naming the owner and beneficiary of the policy as the SADI Trust ("Penn Mutual SADI Policy"). Since enrolling in SADI, TBM, Inc., through the trust and Mr. Seehawer, has made approximately $125,000 in contributions to secure life insurance for Lawrence O. Fischer. *Compl.*, ¶ 44.

Lawrence O. Fischer passed away in Boise, Idaho on October 18, 2014. *Compl.* at ¶ 48. Immediately thereafter, Mr. Seehawer, consistent with his obligation as trustee, submitted the necessary forms to SADI and Grist Mill to make claims under each of the

above three policies. *Compl.* ¶¶ 49 and 58; *Seehawer Aff.* at ¶ 8. No proceeds were ever paid out.

### 2. The Universitas Restraining Orders

In August of 2014—prior to Mr. Fischer's death—Universitas confirmed an arbitration award in the lawsuit styled *Universitas Education, LLC v. Nova Group, Inc. as trustee, sponsor and fiduciary of The Charter Oak Trust Welfare Benefit Plan, et al.*, Case Nos. 11-CV-1590 and 11-CV-8726, Southern District of New York (the "Universitas Lawsuit"). In connection with this judgment, on August 27, 2014, Universitas issued restraining orders to Grist Mill, SADI, Penn Mutual, and LSW that purported to restrain the payment of insurance proceeds by LSW and Penn Mutual. *Compl.* ¶ 65. These Restraining Notices will be further discussed in the Court's analysis below.

### 3. The Penn Mutual Interpleader

On February 17, 2015, Penn Mutual filed a Complaint in Interpleader in the lawsuit styled *Penn Mutual Life Insurance Company v. Kathy Kehoe, as Trustee of the Sickness, Accident & Disability Indemnity Trust 2005; Kathy Kehoe, as Trustee of the Grist Mill Trust Dated 10-1-03; and Universitas Education LLC*, Case No. 15-CV-01111, Southern District of New York. Dkt. 18-1, p. 5.

In the Penn Mutual Interpleader action, Penn Mutual alleged that it issued two life insurance policies on an unnamed insured who died on October 18, 2014: (1) Policy No.

008170968, with a death benefit of $1,250,000 (the SADI Policy);[2] and (2) Policy No. 008199632, with a death benefit of $750,000 (the Grist Mill Policy). *Id*. Penn Mutual alleged its belief that the Restraining Notice served on it by Universitas pertained to this property. Accordingly, Penn Mutual, Universitas, and Kehoe jointly moved for an order permitting Penn Mutual to pay the proceeds of the Grist Mill Policy and the SADI Policy into the Registry of the Court. *Id*. On April 10, 2015, the Court granted the parties' motion. On three separate occasions, Universitas has served Mr. Seehawer with deposition and document requests that coincide with important deadlines in the Penn Mutual Interpleader action. *Seehawer Aff*. at ¶.

### 4. LSW Interpleader

On June 12, 2015, LSW filed a Complaint in Interpleader against Universitas and Kathy Kehoe, as Trustee of the Grist Mill Trust, in the U.S. District Court for the Southern District of New York. Dkt. 18-1, p. 5; *see Exh: H*: *Compl. in Interpleader, Life Ins. Co. of the Sw. v. Kehoe*, No. 1:15-CV-04594 (S.D.N.Y. June 12, 2015). LSW alleged that it issued life insurance Policy No. LS0147497, with a death benefit of $1,000,000, on

---

[2] Penn Mutual included in the Interpleader sums owed under the Penn Mutual SADI Policy although SADI is not a judgment debtor in the Universitas Lawsuit. *Compl.*, ¶ 66. On November 12, 2015, the United States District Court for the Southern District of New York entered the Order (Dkt. 588) denying the Universitas request to extend the restraining orders to the Penn Mutual SADI Policy death benefits.

an unnamed insured who died on October 18, 2014 (the "LSW Policy"). *Id.*, ¶¶ 6–7. The owner and beneficiary of the LSW Policy was alleged to be the Grist Mill Trust. *Id.* ¶ 11.

Like Penn Mutual, LSW alleged that it had received a Restraining Notice on August 27, 2014, that appeared to extend to the LSW Policy. *Id.* ¶¶ 13–15. Like Penn Mutual, LSW alleged that the identity of the proper recipient of the death benefits—the Grist Mill Trust or Universitas—was unclear, and requested an order permitting LSW to deposit the death benefit with the Registry of the Court and discharge it from any liability concerning disposition of the LSW Policy proceeds. *Id.* ¶¶ 15, 21. The parties subsequently filed a joint motion to permit LSW to deposit the LSW Policy proceeds with the S.D.N.Y. Court. The S.D.N.Y. Court granted the parties' motion.

The LSW Interpleader action and the Penn Mutual Interpleader action were consolidated for all purposes on September 11, 2015 ("Interpleader"). Dkt. 21-7, p. 8.

### 5. The Present Action

On February 24, 2016, Seehawer filed this declaratory judgment action to determine the ownership of the policy proceeds from the Penn Mutual Grist Mill Policy, LSW Policy, and the Penn Mutual SADI Policy, and relatedly, whether those proceeds are collectible by Universitas. Seehawer also alleges breach of contract and breach of fiduciary duty claims against SADI and Grist Mill, and an abuse of process claim against Universitas. Universitas now moves the Court to dismiss the case against it for lack of jurisdiction.

## ANALYSIS

To withstand Universitas's motion to dismiss under Fed. R. Civ. P. 12(b)(2), Seehawer must show that the Court has personal jurisdiction over Universitas. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as here, the motion is based on written materials instead of an evidentiary hearing, Seehawer need only make a *prima facie* showing of jurisdictional facts to withstand Universitas's motion to dismiss. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In addressing Universitas's motion to dismiss, the Court must take Seehawer's uncontroverted allegations in his complaint as true and resolve factual disputes in affidavits in his favor. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). However, where Universitas offers evidence to support its motion, Seehawer may not simply rest on the bare allegations of his complaint. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Instead, Seehawer must come forward with facts, by affidavit or otherwise, to rebut. *Id.*

Where, as here, no federal statute governing personal jurisdiction applies, the Court applies the law of the state in which it sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Idaho's long-arm statute, Idaho Code § 5-514, allows a broader application of personal jurisdiction than due process permits, the Court need look only to due process to determine personal jurisdiction. *Wells Cargo, Inc. v. Transp. Ins. Co.*, 676 F. Supp. 2d 1114, 1119 (D. Idaho 2009). Thus, under Idaho law, the statutory and due process analyses are the same. *Id.*

MEMORANDUM DECISION AND ORDER - 9

Exercising personal jurisdiction over a defendant comports with due process if the defendant "has certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). In turn, sufficient minimum contacts can give rise to general or specific personal jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). General personal jurisdiction arises if the defendant's forum activities "are substantial, continuous and systematic," whereas specific personal jurisdiction arises if the defendant's "less substantial contacts with the forum give rise to the cause of action before the court." *Id.* Here, Seehawer proceeds only under a specific jurisdiction analysis.

The Ninth Circuit analyzes specific personal jurisdiction under a three-prong test:

(1)  The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)  the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)  the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc.*, 433 F.3d at 1205-06 (quoting *Schwarzenegger*, 374 F.3d at 802). Seehawer bears the burden of satisfying the first two prongs. *Menken v. Emm*, 503 F.3d 1050, 1057

(9th Cir. 2007). If Seehawer succeeds, the burden then shifts to Universitas to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802).

### 1. Purposeful Availment and Purposeful Direction

The first prong of the specific personal jurisdiction test includes both purposeful direction and purposeful availment. Purposeful availment applies to contract claims, in which the Court examines whether the defendant "'purposefully avails itself of the privilege of conducting activities' or 'consummate[s][a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract." *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802) (alterations in original). In contrast, purposeful direction generally applies to tort claims, in which the Court applies an effects test focusing on the forum where the defendant's actions were felt, regardless of whether the actions occurred in that forum. *Yahoo! Inc.*, 433 F.3d at 1206 (citing *Schwarzenegger*, 374 F.3d at 803). This so-called effects test was described by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, (1984) as imposing three requirements: "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Schwarzenegger*, 374 F.3d at 803).

Here, Seehawer seeks a declaratory judgment against Universitas regarding the ownership of the proceeds from the three policies at issue in this case. Accordingly, this

claim for declaratory judgment sounds in contract. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Seehawer has also put forth an abuse of process claim against Universitas—an action sounding in tort. Thus, both the purposeful availment and purposeful direction tests must be applied.

## 2. Application

In support of his argument that both purposeful availment and purposeful direction are satisfied, Seehawer alleges that Universitas has utilized litigation tactics "for the sole purpose of targeting the insurance proceeds owned by Plaintiffs" and that Universitas "has continued to restrain the payment of sums held in trust by SADI for the benefit of Plaintiffs even after a ruling from the [S.D.N.Y. court] that such conduct was improper and contrary to settled law." Dkt. 21, p. 12.[3] In terms of specific conduct, Seehawer alleges that (1) Universitas issued Restraining Notices that it knew directly impacted beneficiaries of insurance policies not properly before the S.D.N.Y. court; and (2) Universitas has pursued discovery against Seehawer in the Interpleader action. *Id*. As

---

[3] As this Order was being finalized, the Court become aware via the Plaintiff's Supplemental Memorandum in Support of its Motion for Preliminary Injunction (Dkt. 30), that on May 18, 2016, SADI and Grist Mill entered into a stipulation with Universitas in the Interpleader court, whereby they asked the Interpleader court to distribute the proceeds of the Penn Mutual SADI Policy. Again, the Penn Mutual SADI Policy was issued as Policy Number 008170968 and has a death benefit of $1,250,000. The stipulation provides that $250,000 of the proceeds of the Penn Mutual SADI Policy be distributed to Universitas by wire transfer in the care of its counsel, and that $1,000,000 (plus any accrued interest) be distributed to SADI by wire transfer.

further discussed below, these actions—taken alone or together—are insufficient to satisfy either the contract-based purposeful availment test or the tort-based purposeful direction test.

The crux of Seehawer's argument is that by issuing Restraining Notices to Penn Mutual and LSW, Universitas purposefully and negatively impacted B.A. Fischer Sales, Inc. and TBM, Inc. in this case. The facts relevant to the issuance of these Restraining Notices do not appear to be in dispute. Universitas was the beneficiary of two life insurance policies with a combined face value of $30,000,000, issued to the Charter Oak Trust Welfare Benefit Plan, a Connecticut-based multiple employer welfare benefit trust. Dkt. 18-1, p. 2. The Charter Oak Trust misappropriated the policy proceeds and in 2010, Universitas commenced an arbitration proceeding against one of the Charter Oak trustees. *Id.* at p. 3. Ultimately, Universitas was awarded more than $26,000,000 and has been engaged in judgement enforcement efforts ever since. *Id.* In August 2014, a federal judge issued a turnover order against several individuals and entities associated with the Charter Oak Trust. *Id.* Following that order, Universitas issued Restraining Notices to various entities believed to be in possession of assets subject to the turnover. *Id.*, p. 4.[4] Among

---

[4] Universitas points out that:

> Under New York law, a "Restraining Notice" may be issued by the Court or an attorney for a judgment creditor to a judgment debtor, obligor, or other person "in possession or custody of property in which he or she knows or has reason to believe the judgment

(Continued)

the entities issued Restraining Notices were Grist Mill, SADI, Penn Mutual, and LSW. *Id*.; Dkt. 21, p. 4. It is not disputed that these Restraining Notices were issued prior to the October 18, 2014 death of Lawrence Fischer. Dkt. 26, p. 4.

Universitas's service of the Restraining Notices is insufficient to invoke the benefits of Idaho law. First, it must be noted that Seehawer is the only apparent link to Idaho here. It is undisputed that Universitas is a New York-based limited liability company organized under the laws of the state of Delaware. Dkt. 18-1, p. 2. Universitas has never conducted business in the state of Idaho, is not registered to do business in Idaho, has no employees, subsidiaries, property, or bank accounts in Idaho, pays no taxes in Idaho, has no contracts or other business arrangements with Idaho residents, and does not maintain an agent for service of process in Idaho. *Id*. The Restraining Notices were not issued to Idaho-based entities or individuals. In issuing the Restraining Notices, Universitas was following New York-based law and trying to enforce a New York-based judgment. In sum, there is no evidence that Universitas issued the Restraining Notices to

---

debtor or obligor has an interest." See N.Y. CIV. PRAC. LAW §§ 5222(a), (b). Once served, the Restraining Notice strictly limits the ability of the recipient "to make or suffer any sale, assignment, transfer or interference" with any property in which the judgment debtor or obligor may have an interest, or to "dispose of any such debt" of the judgment debtor or obligor. Id. § 5222(b).

Dkt. 18-1, p. 4, n.1.

Grist Mill, SADI, Penn Mutual, and LSW because of any connection to Idaho. This is further underscored by the fact that the Restraining Notices were issued prior to the death of Lawrence Fischer.

For the same reasons discussed above, two of the three requirements of the *Calder* effects test are not satisfied here. While Universitas's issuance of the Restraining Notices was an intentional act, there is no indication that this act was expressly aimed at Idaho, or that Universitas knew that harm would likely be suffered here.

Seehawer argues that the case of *Yahoo! Inc. v. La Ligue Contre La Racisme Et L'Antisemitisme* is determinative in this lawsuit; however, that case can be distinguished. 433 F.3d 1199 (9th Cir. 2006); Dkt. 21, p. 11. In that case, the Ninth Circuit determined that, while it was a "close question," personal jurisdiction over the defendants was proper because they had obtained orders from a French court directing Yahoo! to take certain actions *in California* or face significant penalties. 433 F.3d at 1209 (emphasis added). In contrast here, the Restraining Notices do not preclude or require any actions to be taken in Idaho specifically. At most, they restrict the transfer of funds by Penn Mutual and LSW to Grist Mill and SADI—two Connecticut-based entities—and in turn, to a beneficiary who could live anywhere but who happens to reside in Idaho.

Finally, to the extent that Seehawer relies on Universitas's service of discovery requests on him to establish personal jurisdiction, this argument is not persuasive. Even in conjunction with the issuance of the restraining orders, these contacts are *per se*

**MEMORANDUM DECISION AND ORDER - 15**

insufficient to confer personal jurisdiction. Seehawer has pointed to no authority that indicates service of discovery requests confers personal jurisdiction in the recipient's forum.  And the Court's own research revealed none.

Because the Court finds that Universitas did not purposefully avail itself of the laws of Idaho, or purposefully direct its actions toward Idaho, the Court need not address the remaining two prongs of the personal jurisdiction test. However, the Court will note that the other two requirements appear to be lacking as well. Most significantly, because the proceeds from the policies that Seehawer seeks in this lawsuit are already being held in the registry of the Interpleader court,[5] the Court questions how it could impose the relief that Seehawer seeks. In any event, the Court lacks specific jurisdiction over Universitas.

---

[5] With the exception, now, of the Penn Mutual SADI Policy.

**MEMORANDUM DECISION AND ORDER - 16**

## ORDER

**IT IS ORDERED:**

1. Universitas's Motion to Dismiss for Lack of Jurisdiction (Dkt. 18) is **GRANTED**.

DATED: May 31, 2016

B. Lynn Winmill
Chief Judge
United States District Court